UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ALBERTO OSUNA SANCHEZ, | ) | |
| *Plaintiff*, | ) ) ) | Case No. 3:25-cv-62 |
| v. | ) ) | Judge Atchley |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) ) | Magistrate Judge Poplin |
| *Defendant*. | ) ) | |

## ORDER

Before the Court is Plaintiff Alberto Osuna Sanchez's ("Osuna") Motion for Temporary Restraining Order [Doc. 2]. Plaintiff contends that some of Defendant National Collegiate Athletic Association's ("NCAA") eligibility bylaws violate Section 1 of the Sherman Antitrust Act. For the reasons explained below, Plaintiff's motion will be **DENIED**.

I.   **FACTUAL BACKGROUND**

Plaintiff Alberto Osuna Sanchez plays college baseball. His collegiate career began in Spring of 2020 at Walters State, a junior college in Morristown, Tennessee. [Doc. 2-1 at ¶ 1]. Osuna enjoyed great success during his two years at Walters State. [*Id.*]. His first season was cut short due to COVID-19, but he earned player of the year honors in his second season and came one home run short of leading the league in that category. [*Id.*]. After the Spring 2021 season, Osuna took his talents to Division I and joined UNC Chapel Hill's baseball program. [*Id.* at ¶ 2]. Osuna played three seasons with the Tar Heels and continued his streak of success, hitting a total of 45 home runs and entering the 2023 season as a Preseason All American. [*Id.*].

After the Spring 2024 season concluded, Osuna wanted to play another year of Division I baseball. [Doc. 1 at ¶ 32]. The problem for Osuna? NCAA's eligibility bylaws rendered him

ineligible to play a fourth year of Division I baseball. Osuna had only played three years of Division I baseball at UNC, but one of his two seasons at Walters State counted against his four total years of Division I eligibility.[1] The one season at Walters State counted against Osuna pursuant to NCAA Bylaw 12.02.6. That bylaw, when read alongside others, provides that an athlete's time spent competing at junior colleges counts against him when calculating his four years of Division I eligibility. [Doc. 3 at 4–5]. Thus, Osuna had exhausted his Division I eligibility based on his Spring 2021 season at Walters State and three seasons at UNC.

This reality led Osuna to enroll at the University of Tampa, a Division II institution, in the Fall of 2024. Before Osuna ever took the field in Tampa, however, an athlete who faced similar eligibility issues—Vanderbilt University Quarterback Diego Pavia—filed a lawsuit against the NCAA. Like Osuna, Pavia competed for two years at a junior college, with one of those years exempted due to COVID-19. *Pavia v. Nat'l Collegiate Athletic Ass'n*, No. 3:24-cv-1336, 2024 WL 5159888, at *4 (M.D. Tenn. Dec. 18, 2024). Also like Osuna, Pavia then moved to Division I and played at that level for three seasons. *Id.* Pavia faced the same dilemma Osuna now faces: his junior college season and three Division I seasons combined to exhaust his four years of eligibility. *Id.* So he sued. Pavia argued that the very same bylaws Plaintiff challenges violate the Sherman Antitrust Act. *Id.* at *1. The court denied Pavia's request for a temporary restraining order but later granted him preliminary injunctive relief on December 18, 2024. *Id.*

Five days after the Middle District of Tennessee granted this injunctive relief, the NCAA issued a Blanket Waiver that allows former junior college athletes like Pavia to compete for a fourth year in Division I. [Doc. 1-2]. That Blanket Waiver does not apply to Osuna, however,

---

[1] Only Osuna's 2021 season at Walters State counts against him for Division I eligibility purposes. His 2020 season, cut short due to COVID-19, does not count against him based on the NCAA's decision to exclude that season from any athlete's eligibility calculation. [Doc. 3 at 5].

because it only covers athletes who will use this year of eligibility in the 2025–26 academic year. Osuna would use his year of eligibility in the 2024–25 academic year by playing this spring, so the Blanket Waiver is of no benefit to him. [Doc. 3 at 7]. Nonetheless, Osuna chose to enter the transfer portal and give Division I baseball another shot. [Doc. 2-1 at ¶ 4]. He officially entered the transfer portal on January 13, 2025, and committed to the University of Tennessee ("UT") later in the month. [*Id.*].

Given the Blanket Waiver's inapplicability to him, Osuna remained ineligible pursuant to the NCAA's rules. UT therefore submitted a waiver request to the NCAA on February 3, 2025, and asked that Osuna be permitted to play a fourth season of Division I baseball. [Doc. 2 at ¶ 3]. Despite several attempts to reach NCAA representatives, Plaintiff's counsel had not heard back as of February 11, 2025. [*Id.* at ¶ 4–6]. This lawsuit followed.

Plaintiff moved for a temporary restraining order on February 12, 2025. [Doc. 2]. He asks the Court to enjoin the NCAA from enforcing Bylaw 12.02.6 against him and declare his eligibility for the Spring 2025 baseball season. [Doc. 3 at 18]. With UT's baseball season set to begin on February 14, 2025, the Court conducted a hearing on February 13, 2025, and counsel for both parties appeared. Plaintiff's motion is now ripe for the Court's review.

## II.    STANDARD OF REVIEW

Temporary restraining orders are "extraordinary remedies." *Tennessee v. Nat'l Collegiate Athletic Ass'n*, 715 F. Supp. 3d 1048, 1053 (E.D. Tenn. 2024) (citation omitted). They are designed "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). Courts consider four factors when determining whether to issue a temporary restraining order. Those factors include "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would

3

suffer irreparable harm absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Northeast Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

### III. ANALYSIS

The status quo renders Plaintiff ineligible to play on UT's 2025 baseball team. Plaintiff does not seek to preserve this status quo. To the contrary, Plaintiff's motion for a temporary restraining order asks the Court to disturb the status quo and declare him eligible. The nature of this request renders Plaintiff's application for a temporary restraining order even more "extraordinary" than usual. Indeed, "a TRO tantamount to a mandatory injunction requires a higher—yet undefined—burden to issue than required of an order merely preserving the status quo." *Shelby Cnty. Advocates for Valid Elections v. Hargett*, 348 F. Supp. 3d 764, 769 (W.D. Tenn. 2018) (citing *Hill v. Snyder*, No. 16-2003, 2016 WL 4046827, at *2 (6th Cir. July 20, 2016)). When a temporary restraining order seeks to alter the status quo, "the requested relief should be denied unless the facts and law clearly favor the moving party." *Taylor v. Peone*, No. 1:24-cv-45, 2024 WL 3572907, at *2 (M.D. Tenn. July 29, 2024).

This lawsuit is one day old. On this record, and at this exceedingly early stage of litigation, the Court does not view the law to "clearly favor" Plaintiff. One non-binding decision from the Middle District of Tennessee stands in Plaintiff's favor, but even that case saw the court initially deny the request for a temporary restraining order. *Pavia v. Nat'l Collegiate Athletic Ass'n*, No. 3:24-cv-1336, Doc. 15 (M.D. Tenn. Nov. 12, 2024). The Southern District of Mississippi, also addressing a challenge to NCAA Bylaw 12.02.6, likewise denied the plaintiff's motion for a temporary restraining order. *Wade v. Nat'l Collegiate Athletic Ass'n*, No. 2:24-cv-196, Doc. 8 (S.D. Miss. Dec. 23, 2024).

4

Both the *Pavia* and *Wade* courts, in denying requests for temporary restraining orders, emphasized that the plaintiffs sought to disrupt the status quo and had known of their eligibility issues for some time before seeking judicial intervention. *Id.* at 5–6; *Pavia*, Doc. 15 at 2. Plaintiff argued at today's hearing that his case comes to the Court on a more compressed timeline. He filed his waiver request just ten days ago, whereas Pavia and Wade negotiated with the NCAA for longer periods before filing suit. Notwithstanding Plaintiff's efforts to distinguish *Pavia* and *Wade*, Plaintiff knew of his eligibility predicament when he transferred to the University of Tampa in the Fall of 2024. He alleges such awareness in his complaint. [Doc. 1 at ¶ 32]. The Court, at this stage, will follow *Pavia* and *Wade* and deny Plaintiff's request for a temporary restraining order on account of his delay.

IV. **CONCLUSION**

On the present record, Plaintiff's Motion for Temporary Restraining Order [Doc. 2] is **DENIED**. The Court will nonetheless establish an expedited briefing schedule to resolve Plaintiff's request for a preliminary injunction. Plaintiff is **ORDERED** to file any motion for preliminary injunction on or before **February 19, 2025**. Defendant is **ORDERED** to respond on or before **February 21, 2025**, and Plaintiff may file a reply on or before **February 24, 2025**. The Court will conduct a hearing on Plaintiff's motion on **February 26, 2025, at 2:00 p.m. ET** at the U.S. Courthouse, 800 Market Street, Knoxville, Tennessee.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**