IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALBERTO OSUNA SANCHEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case. No: 3:25-cv-00062 |
| ) | |
| NATIONAL COLLEGIATE ATHLETIC ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL FILING**

Pursuant to Local Rule 7.1(d), Osuna responds to the NCAA's supplemental filing and states that the Northern District of Georgia case of *Goldstein v. NCAA* is distinguishable for the reasons set forth herein. Osuna's case is no different than Pavia's, a point which the NCAA's counsel conceded at the preliminary injunction hearing.

**I.    The Eleventh Circuit has a Higher Standard for a Preliminary Injunction**

To obtain a preliminary injunction in the Eleventh Circuit, a plaintiff must "clearly" show a "substantial" likelihood of success on the merits and a "substantial" showing of irreparable harm. (Goldstein, pp. 6-7). Osuna does not have to make such a high showing in the Sixth Circuit. "As long as a plaintiff demonstrates *some* likelihood of success on the merits, a court should balance rather than tally these factors." *La.-Pacific Corp. v. James Hardie Bldg. Prods*., 928 F.3d 514, 517 (6th Cir. 2019) (emphasis in original). The standard for obtaining a preliminary injunction in the Sixth Circuit is no higher for antitrust claims and numerous courts in multiple jurisdictions have recently granted injunctions against the NCAA on antitrust claims, showing such relief is obtainable. *See Ohio v. NCAA, 706 F. Supp. 3d 583, 588 (N.D.W. Va. 2023 (*granting temporary restraining order on the grounds that the Transfer Eligibility Rules likely violates antitrust law*);*

*Pavia v. NCAA,* No. 3:24-cv-01336, 2024 U.S. Dist. LEXIS 228736, at *36 (M.D. Tenn. Dec. 18, 2024) (granting preliminary injunction on the grounds that the JUCO Penalty likely violates antitrust law); *Fourqurean v. NCAA*, 2025 U.S. Dist. LEXIS 22012, at *29 (W.D. Wis. Feb. 6, 2025) (granting preliminary injunction on the grounds that NCAA eligibility rule likely violates antitrust law); *Tennessee v. NCAA*, 718 F. Supp. 3d 756, 766 (E.D. Tenn. 2024) (granting preliminary injunction against NCAA rule on grounds NIL rule likely violates antitrust law); *Clayton v. NCAA*, No. 801850/2024E, 2024 N.Y. Misc. LEXIS 10385, at *1 (Sup. Ct. Feb. 23, 2024) (granting preliminary injunction against NCAA where NCAA's arbitrary denial of plaintiff's waiver was likely to cause antitrust injury due to the restraint on competition through the inequitable application of the NCAA's eligibility rules).

Antitrust analysis is not a rote, inflexible test and can be conducted in varying degrees, including a "quick look" and "twinkling of the eye." *Pavia v. NCAA*, 2024 U.S. Dist. LEXIS 228736, at *19 (M.D. Tenn. Dec. 18, 2024) (quoting *NCAA v. Alston*, 594 U.S. 69, 97) ("These three steps do not represent a rote checklist, nor may they be employed as an inflexible substitute for careful analysis. As we have seen, what is required to assess whether a challenged restraint harms competition can vary depending on the circumstances.")).

Notably, the Middle District of Tennessee's decision to award a preliminary injunction to Pavia, enjoining the NCAA from enforcing the same JUCO Penalty at issue in this case, illustrates the Court's ability to grant a preliminary injunction in this matter – especially where declining to grant injunctive relief would leave no meaningful remedy for Osuna.

II.     **The Goldstein Court Ignores Precedent Finding Bylaws to Be Commercial in Nature**

The *Goldstein* Court opined that the JUCO Penalty is not commercial in nature by relying on outdated language from pre-NIL cases. Post-NIL, a rule that restricts an athlete's ability to play a fourth year of Division I athletics, when the athlete's NIL earnings are most likely at their apex,

2

6610152.1
Case 3:25-cv-00062-CEA-DCP    Document 25    Filed 02/28/25    Page 2 of 7    PageID #: 477

undoubtedly has a commercial effect. *Pavia* at *16 ("[I]n the post-*Alston* world in which student-athletes can obtain NIL compensation … pre-*Alston* cases cited by the NCAA simply do not apply."); *Fourqurean at* *14 (W.D. Wis. Feb. 6, 2025) ("Moreover, defendant's eligibility rules likely depress competition for roster spots, and thus, player NIL earnings, by categorically excluding athletes after four seasons of competition when their marketability for NIL income is more likely than not to be at its apex."); *Ohio,* 706 F. Supp. 3d at 591 (restrictions on an athlete's ability to play are a restraint on trade and subject to Sherman Act). Even *O'Bannon* acknowledged that rules couched as "eligibility rules" can be commercial in nature if "there is real money at issue" and post-NIL, there is no doubt that there is real money at issue for a Division I SEC baseball player playing for the defending National Champions. 802 F.3d 1049, 1064 (9th Cir. 2015). For Osuna, the real money at issue here is more money than he has ever had the opportunity to earn, a point which is well-established in the record by his Declaration, and he has additional opportunities to earn even more, as established by the Declarations of Dance, Thompson, and Spurlock. Thus, as a result of the JUCO Penalty, Osuna stands to lose commercial opportunities.

Second, *Goldstein* ignores that other courts have decidedly recognized the commercial nature of rules that restrict a year of eligibility. The Ohio court found the "Transfer **Eligibility Rule**" which required athletes to sit out a year of competition after transferring – the same punishment the JUCO Penalty enacts because the athlete attended a noncomparable, non-NCAA member junior college – to be commercial in nature. 706 F. Supp. 3d at 590.

The NCAA conceded in its Response in Osuna that the *Ohio* Court was correct in finding the Transfer Eligibility Rule to be commercial in nature because it restricts "the free flow of labor within the relevant labor market by 'limiting the choices [student-athletes] have within the relevant labor market' and by decreasing the quality of the NCAA's product by removing quality players

from competition who would be eligible but for the [Rule]." [Doc. 20 p. 5]. That is precisely what the JUCO Penalty does – it restricts the free flow of labor in the market for Division I athletics by limiting the choices the athletes have within the relevant market (a point Dr. Maxcy explains as "discounting" the athlete's choice) and removing quality players from competition who would otherwise be eligible but for the JUCO Penalty.[1]

Even more on point, the Middle District of Tennessee analyzed the exact JUCO Penalty at issue in this case and specifically concluded that the JUCO Penalty is commercial in nature. The *Pavia* Court explained, "**when the NCAA lifted the restriction on NIL compensation, rules regulating who can play – i.e., who can enter the labor market … - became 'commercial in nature.**'"). 2024 U.S. Dist. LEXIS at *16. (emphasis added). By restricting a JUCO athlete's ability to enter the Division I labor market, the JUCO Penalty is commercial in nature.

### III.  The Record in Osuna's Case is Akin to the Record in *Pavia*, not *Goldstein*

Osuna's case is starkly different from Goldstein from an evidentiary standpoint. The *Goldstein* Court distinguished *Pavia* on the grounds that Pavia submitted an expert economics report from Dr. Joel Maxcy upon which the court could rely to grant Pavia injunctive relief. (Goldstein p. 14). Conversely, "Goldstein tendered no expert report, no economic analysis, or even a single exhibit that would allow the Court to conduct its required rule-of-reason analysis." (Goldstein, p. 14). Osuna, like Pavia, has submitted a 20- page expert analysis from Dr. Maxcy, in which he expressly refutes the NCAA's position that the JUCO Penalty does not harm competition in the market. Also unlike Goldstein, Osuna has submitted numerous Declarations to support his claim, upon which the Court can rely to grant injunctive relief. In short, Osuna has

---

[1] In fact, as Vaughn's Declaration shows, the JUCO Penalty removes approximately 20% of quality players from competition in the market who otherwise would be eligible, a fact which was not before the *Goldstein* Court, as the NCAA did not file Vaughn's Declaration in that case.

4

offered at least as much evidence as Pavia (and in fact more), which was sufficient to obtain injunctive relief under the Sixth Circuit's standard.

**IV.     Osuna has Sufficiently Alleged State Law Claims**

Additionally, Osuna has pled state law claims, including a breach of contract claim, upon which the Court can grant a preliminary injunction. Division I athletics are governed by the NCAA's Division I Bylaws Manual, which constitutes an agreement between the NCAA and athletes. The NCAA agrees to be "fair" and "inclusive" in areas including "eligibility."  By arbitrarily granting Pavia and other JUCO athletes a fourth year of Division I eligibility and not Osuna, the NCAA has breached its contractual obligations and implied duty of good faith and fair dealing.  The NCAA's stated purpose in issuing the waiver – to provide clarity to JUCO athletes making choices about their NCAA future – equally applied to Osuna. Including Osuna in the Blanket Waiver is the only way to put meaning behind the NCAA's hollow promise of fairness and inclusivity. Osuna has time left on his eligibility clock (which will expire before the conclusion of this case), he has a spot on a Division I baseball team, and he will use his fourth year of eligibility within the parameters of the Blanket Waiver (before Spring 2026).  As other courts have done, this Court can enjoin in the NCAA from denying Osuna's waiver request and allow him to play his last year in accordance with the Blanket Waiver that allows other JUCO athletes to play. *Fourqurean,* 2025 U.S. Dist. LEXIS 22012; *Clayton,* N.Y. Misc. LEXIS 10385, at *29.

**V.     CONCLUSION**

This case is *Pavia*. The only conceivable difference between Osuna and Pavia is that Osuna plays baseball – a point which Dr. Maxcy dismisses, a point which the NCAA conceded when it included baseball in the Blanket Waiver, and a point which the *Goldstein* Court did not address. Pavis gets to play.  An entire class of JUCO athletes who have the exact same collegiate path as Osuna get to play.  And Osuna has presented sufficient evidence to show he should get to play.

5

6610152.1
Case 3:25-cv-00062-CEA-DCP   Document 25   Filed 02/28/25   Page 5 of 7   PageID #: 480

Respectfully submitted this 28th day of February, 2025.

                                          **WOOLF, McCLANE, BRIGHT,**
                                            **ALLEN & CARPENTER, PLLC**

                                          *s/ Chad Hatmaker*
                                          J. Chadwick Hatmaker (BPR # 018693)
                                          Kaitlyn E. Hutcherson (BPR # 035188)
                                          Post Office Box 900
                                          Knoxville, TN 37901
                                          Tel: (865) 215-1000
                                          Fax: (865) 215-1001
                                          chatmaker@wmbac.com
                                          khutcherson@wmbac.com

                                          *Attorneys for Plaintiff Alberto Osuna Sanchez*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 28, 2025, a true and exact copy of the foregoing Plaintiff's Response to Defendant's Supplemental Filing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

**WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**

*s/ Chad Hatmaker*
J. Chadwick Hatmaker (BPR # 018693)
Kaitlyn E. Hutcherson (BPR # 035188)
Post Office Box 900
Knoxville, TN 37901
(865) 215-1000
chatmaker@wmbac.com
khutcherson@wmbac.com

*Attorneys for Plaintiff Alberto Osuna Sanchez*